**LEWIS BRISBOIS BISGAARD & SMITH LLP**
GORDON J. CALHOUN, State Bar No. 84509
  E-Mail: Gordon.Calhoun@lewisbrisbois.com
RENÉ I. GAMBOA, State Bar No. 136166
  E-Mail: Rene.Gamboa@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Defendant, SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PAMELA MORENO, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>     vs.<br><br>SAN FRANCISO BAY AREA RAPID TRANSIT DISTRICT, a public entity, ELERTS CORP., a Delaware corporation,<br>          Defendants. | CASE NO. 17-cv-2911<br><br>**DEFENDANT SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S CLASS ACTION ALLEGATIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 12(f)**<br><br>[Fed. R. Evid. 201]<br><br>Date:    August 10, 2017<br>Time:    9:00 a.m.<br>Crtrm:   F -15th Floor<br><br>Trial Date:    None Set |

4813-5514-4010.1                                                                                                         17-cv-2911

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. ISSUES PRESENTED .......................................................................................................... 1

III. PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN PURSUANT TO RULE 12(F) ................................................................................................ 2

    A. The Court May Strike Improper Class Action Allegations at the Pleading Stage ...................................................................................................................... 2

        1. Rule 23 Imposes High Hurdles Which Class Litigants Must Clear .............. 2

        2. Frequently Defects Are Obvious on the Face of a Complaint ...................... 2

        3. A Rule 12(f) Motion to Strike Is an Appropriate Culling Procedure ............ 2

        4. Striking Inappropriate Class Allegations Is Consistent with Rule 23 ........... 2

    B. Plaintiff's Complaint Identifies Statutory, Constitutional and Common Law Legal Theories, But Its Gravamen Is Defendants Misrepresented and Concealed Information about How Personal Data Allegedly Collected Would Be Used ....................................................................................................... 3

        1. Introduction .................................................................................................. 3

        2. Plaintiff Alleges a Surveillance System Is Masquerading as a Transit App ................................................................................................................ 3

        3. Plaintiff Alleges BARTD Engages in Deceit, a Form of Fraud ................... 4

        4. Specific Allegations of Deceit Appear in the Second Cause of Action ............................................................................................................ 5

    C. The Allegations in the Complaint Establish the Gravamen Involves Alleged Misrepresentations, Concealments, Inducement, Detrimental Reliance, which Like Overt Claims of Fraud Are Unsuitable for Class Treatment ................. 6

    D. Individual Issues of Causation and Reliance Predominate Over Common Issues Here, as They Did in a Wide Variety of Cases Involving Allegations of Reliance, Rendering Class Action Treatment Impossible for Plaintiff's Claims ..................................................................................................................... 7

        1. Introduction .................................................................................................. 7

        2. When Proof of Reliance Because of Alleged Misrepresentations and Concealments Is Critical to Establishing Putative Class Claims, as It Is Here, Common Issues of Law and Particularly Fact Do Not Predominate .................................................................................................. 8


       3.     Even If Plaintiff Can Make the Requisite Showing of Reliance on Her Own Behalf, She Can Not Make that Showing on Behalf of the Absent Class Members ................................................................................... 8

IV.     CONCLUSION ................................................................................................... 12



# TABLE OF AUTHORITIES

Federal Court Cases

*Am. Exp. Co. v. Italian Colors Rest.*,
　　133 S. Ct. 2304 (2013) .................................................................................................. 2

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
　　2015 U.S. Dist. LEXIS 34589 (C.D. Cal. Mar. 18, 2015) .................................................. 2

*Amchem Prods., Inc. v. Windsor*,
　　521 U.S. 591 (1997) ...................................................................................................... 12

*Buckley v. Countrywide Home Loans, Inc.*,
　　2010 U.S. Dist. LEXIS 40866 (S.D. Cal. Apr. 23, 2010) ................................................... 8

*Castano v. Am. Tobacco Co.*,
　　84 F.3d 734 (5th Cir. 1996) ............................................................................................ 8

*Fantasy, Inc. v. Fogerty*,
　　984 F.2d 1524 (9th Cir. 1993) ....................................................................................... 2

*Gen. Tel. of the Sw. v. Falcon*,
　　457 U.S. 147 (1982) ....................................................................................................... 2

*Gonzalez v. P&G Co.*,
　　247 F.R.D. 616 (S.D. Cal. 2007) .................................................................................... 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
　　273 F.R.D. 586 (C.D. Cal. 2009) ................................................................................ 7, 8

*In re First Am. Home Buyers Prot. Corp. Class Action Litig.*,
　　313 F.R.D. 578 (S.D. Cal. 2016) .................................................................................... 7

*Mazza v. Am. Honda Motor Co.*,
　　666 F.3d 581 (9th Cir. 2012) ......................................................................................... 8

*Ortiz v. Fibreboard Corp.*,
　　527 U.S. 815 (1998) ..................................................................................................... 12

*Picus v. Wal-Mart Stores, Inc.*,
　　256 F.R.D. 651 (D. Nev. 2009) ........................................................................... 9, 10, 11

*Pilgrim v. Universal Health Card, LLC*,
　　660 F.3d 943 (6th Cir. 2011) ......................................................................................... 3

*Poulos v. Caesars World, Inc.*,
　　379 F.3d 654 (9th Cir. 2004) ......................................................................................... 7

*Rainbow Bus. Sols. v. Merch. Servs.*,
　　2013 U.S. Dist. LEXIS 179288 (N.D. Cal. Dec. 20, 2013) ......................................... 9, 11

*Rodman v. Safeway, Inc.*,
  2014 U.S. Dist. LEXIS 31438 (N.D. Cal. Mar. 9, 2014) ...................................................... 6

*Route v. Mead Johnson Nutrition Co.*,
  2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013) ...................................................... 3

*Sanders v. Apple, Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................................ 3, 4, 8

*Stokes v. CitiMortgage, Inc.*,
  2015 U.S. Dist. LEXIS 21641 (C.D. Cal. Jan. 16, 2015) ...................................................... 2

*Wright v. Family Dollar, Inc.*,
  2010 U.S. Dist. LEXIS 126643 (N.D. Ill. Nov. 30, 2010) .................................................... 2

<u>State Court Cases</u>

*Zarrella v. Minn. Mut. Life Ins. Co.*,
  824 A.2d 1249 (R.I. 2003) .................................................................................................... 9

<u>Federal Statutory Authorities</u>

28 U.S.C. § 2072(b) ..................................................................................................................... 12

<u>State Statutory Authorities</u>

Cal. Civ. Code § 1750 .................................................................................................................... 5

Cal. Civ. Code §§ 1572, et seq ...................................................................................................... 4

Cal. Civ. Code §§ 1750, et seq ...................................................................................................... 5

<u>Federal Rules and Regulations</u>

Fed. R. Civ. P. 12(f) ....................................................................................................................... 2

Fed. R. Civ. P. 23 ........................................................................................................................... 7

Fed. R. Civ. P. 23(b)(3) ................................................................................................................. 8



# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff filed a Complaint alleging Defendants have offered to the public what appears to be an innocuous downloadable transit app ostensibly to make their lives easier and more secure by providing useful information about the BARTD system and a convenient way to contact law enforcement if they encounter or observe unlawful activity. She contends this helpful app, the BARTD Watch App, is actually a surreptitious surveillance system. While Plaintiff individually may have a claim for interference with her privacy rights, assuming her allegations are true, which BARTD denies, she is not representative of the other persons who downloaded the BARTD Watch App for the simple reason that the claims as pleaded require individualized determinations of issues like inducement and reliance. When these types of determinations are required, common issues of law and fact do not predominate. For that reason, the class allegations should be stricken.

## II. ISSUES PRESENTED

1. Are Plaintiff's failures to comply with her pleading obligations under Rule 23(a) and (b) so facially apparent that striking all class obligations pursuant to Rule 12(f) is appropriate?

2. Are Plaintiff's allegations about BARTD's deceptions, misrepresentations, concealments and obfuscations so dependent upon each putative class member's perception of and reaction to them that individual factual issues predominate over common ones and class action treatment does not provide a superior, speedier or more just way of addressing the issues presented?

3. Are Plaintiff's allegations so like those typically found in fraud claims that the general rule barring use of class actions in cases not involving securities fraud should be applied?

## III. PLAINTIFF'S CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN PURSUANT TO RULE 12(F)

### A. The Court May Strike Improper Class Action Allegations at the Pleading Stage

#### 1. Rule 23 Imposes High Hurdles Which Class Litigants Must Clear

A plaintiff seeking to certify a class must satisfy the requirements of both Rule 23(a) and at least one subsection of Rule 23(b). "Rule [23] imposes stringent requirements for certification that exclude most claims…" (*Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2307 (2013).)

#### 2. Frequently Defects Are Obvious on the Face of a Complaint

Often times the impossibility of class certification is apparent on the face of the complaint. (*See, e.g.*, *Gen. Tel. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ["Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim"].)

#### 3. A Rule 12(f) Motion to Strike Is an Appropriate Culling Procedure

"'If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations.'" (*Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS 34589, at *20 (C.D. Cal. Mar. 18, 2015) [citations omitted.].) The "'function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial….'" (*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) [citations omitted], *rev'd on other grounds*, 510 U.S. 517 (1994).)

#### 4. Striking Inappropriate Class Allegations Is Consistent with Rule 23

An order striking Plaintiff's class action allegations now is also consistent with Rule 23(c)(1)(A), which instructs courts to "determine by order whether to certify the action as a class action" at "an early practicable time…" (*See, e.g.*, *Wright v. Family Dollar, Inc.*, 2010 U.S. Dist. LEXIS 126643, at *4 (N.D. Ill. Nov. 30, 2010) [granting defendant's motion to strike class allegations, noting this "early practicable time" directive indicates "courts may—and should—address the plaintiffs' class allegations when the pleadings are facially defective…"].) Extensive discovery is not contemplated. (*Stokes v. CitiMortgage, Inc.*, 2015 U.S. Dist. LEXIS 21641, at *11 (C.D. Cal. Jan.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

16, 2015) ["It is thus appropriate to strike class allegations prior to *discovery* where the allegations make it obvious that classwide relief is not available."]; *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) [a district court may strike class allegations prior to discovery when discovery will not "alter the central defect in th[e] class claim."].) And courts will strike class allegations where, as here, "the matter is sufficiently obvious from the pleadings." (*Route v. Mead Johnson Nutrition Co.*, 2013 U.S. Dist. LEXIS 35069, at *22-27 (C.D. Cal. Feb. 21, 2013) [striking nationwide class action claims asserting breach of express warranty]; *see also Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) [holding Apple's motion to strike class allegations was "not premature"].)

    **B.    Plaintiff's Complaint Identifies Statutory, Constitutional and Common Law Legal Theories, But Its Gravamen Is Defendants Misrepresented and Concealed Information about How Personal Data Allegedly Collected Would Be Used**

        **1.    Introduction**

Plaintiff styles her Complaint as seeking recovery for alleged violations of the Cellular Communications Interception Act, Consumer Legal Remedies Act, Article I, Section 1 of the California Constitution and intrusion upon seclusion. But, the charging allegations of her Complaint and therefore the gravamen or gist of her claims turn on Defendants' alleged concealments, misrepresentations, deceptions and other related actions and omissions which induced her to believe she downloaded and used a benign transit app when, in fact, she unwittingly exposed herself to unlawful governmental surveillance as a result of Defendants' deception. Illustrative allegations are addressed below. Why they make class treatment inappropriate are addressed in the next section.

        **2.    Plaintiff Alleges a Surveillance System Is Masquerading as a Transit App**

Plaintiff begins by alleging Defendants' app masquerades as something it is not and unlawfully and secretly collects personally identifiable information. She alleges Defendants disguise the true purpose served by the app.

> "[¶ 4.[  Unfortunately, BARTD … and Elerts … have released a mobile application *masquerading* as a transit app that *secretly collects* Californians' unique cellular numeric identifiers and physical locations…. [¶ 5.] However, a detailed review of the BARTD Watch App reveals that Defendants have been using it to *secretly collect* Californians' unique mobile device identification numbers … and periodically track their precise locations…. [¶ 6.] But by collecting the device identification numbers, locations, and other personal information … Defendants have amassed a trove of data

through the App….[¶ 7.] Defendants' implementation of its ***unique cellular numeric identifier catching devise disguised as a transit app*** has been done without any of the protections provided by the Act and remains unchecked." (Complaint ¶¶ 4-7 [Emphasis added].)

Plaintiff alleges Defendants falsely represent the purpose of their app and instead of providing an app which makes use of the BARTD system easier and safer, BARTD, a governmental agency, uses the app to engage in unlawful surveillance of tens of thousands of transit users.

"But while Defendants ***represent*** that the App is a 'discreet' way of reporting issues and monitoring alerts (along with being able to report anonymously), Defendants actually programmed the App to ***secretly collect*** transit users' unique cellular identifiers, periodically monitor users' locations and track the identities of anonymous reporters." (Complaint ¶29 [Emphasis added].)

Plaintiff alleges Defendants "deceive transit users," their End User Licensing Agreement is "deceptive," they "do not disclose," "surreptitiously collect" and "play 'gotcha'." Additionally, Defendants "conceal their data collection practices" and "make it appear as though" they are doing something lawful, when in fact they are engaged in the unlawful surveillance of members of the putative class.

### 3. Plaintiff Alleges BARTD Engages in Deceit, a Form of Fraud

"… [¶ 39.] As such, Defendants further ***deceive transit users*** into thinking that their location is only sent to Defendants when the transit user takes the affirmative step of submitting a report. [¶ 40.] Defendants' EULA [End User Licensing Agreement] is equally ***deceptive as to their cellular identifier collection scheme***…. Nowhere do Defendants mention that they actually create unique 'clientids' and associate that with ***surreptitiously collected*** cellular identifiers….[¶ 41.] Worse Defendants have attempted to ***play 'gotcha'*** with transit users by burying a purported 'Privacy Policy' on the very last line of their EULA. … [¶ 44] …Defendants ***do not disclose*** that they also programmed the App to automatically monitor transit users' precise locations on a periodic basis. … [¶ 45.] Likewise, Defendants further ***conceal their data collection practices*** by making it seem that any data collected is incidental to app usage…. As such, Defendants' Privacy Policy ***makes it appear as though*** their data collection is incidental to and an unavoidable part of using the App. However, Defendants ***do not disclose*** that they programmed the App to specifically target and collect unique cellular identifiers (e.g., IMEIs) and transmit the collected identifiers back to their servers. To be clear, Defendants' targeting and collection of unique cellular identifiers is not incidental to usage of any part of the App but reflects ***Defendants' intentional and out of the ordinary programming choice***." (Complaint ¶¶ 39-42 and ¶¶ 44-45. [Emphasis added].)

Pursuant to the California Civil Code, deceit is a form of fraud. (Cal. Civ. Code §§ 1572, *et seq.* and 1709, *et seq.*)

### 4. Specific Allegations of Deceit Appear in the Second Cause of Action

The most particularized allegations appear in the claim styled as the Second Cause of Action for Violation of the Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq*. They repeatedly reference the knowing and intentional deception allegedly committed by Defendants, which gave rise to individualized harms caused to putative class members asserting claims, rendering them unsuitable for class adjudication. Although the allegations are stated in the singular, the heading states the claim is asserted against "All Defendants."

> "[¶ 72.] … Defendant[s] ha[ve] engaged in ***deceptive practices***, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750, et seq. …[¶ 73.] Defendant[s], ***acting with knowledge, intentionally and unlawfully*** brought harm upon Plaintiff and the Class by programming their BARTD Watch App to collect and transmit unique cellular numeric identifiers and locations to their servers ***without disclosure*** to Plaintiff and members of the Class. … [¶74.] Specifically, Defendant[s] violated Cal. Civ. Code § 1750 in at least the following respects … ***by representing*** that the BARTD Watch App had characteristics, ingredients, uses, benefits, or quantities [sic] which it did not have (e.g., that if offered a discrete method of issuing a report); … ***by representing*** the BARTD Watch App was of a particular standard, quality, or grade of which it was not (e.g., that it would only collect data and locations in limited circumstances); and … ***by advertising*** the BARTD Watch App with the intent not to sell its goods as advertised (e.g., that it offered a discreet method of issuing a report and that it would only collect data and locations in limited circumstances.). [¶ 75.] ***Defendants unfair or deceptive acts or practices were capable of deceiving a substantial portion of the purchasing public.***" (Complaint, at ¶¶ 72-75 [Emphasis added].)

> [¶ 77.] Once ***Defendants made specific public representations*** regarding the specifications of the BARTD Watch App, Defendants were under a duty to Plaintiff and the Class to disclose their inability or unwillingness to design and distribute the App as represented: … [¶ v.] ***Defendant[s] knew, and in fact intended, that Plaintiff and the Class members would rely on Defendant[s'] representations*** regarding their privacy practices (or omissions of their actual practices) in choosing whether or not to download and run the BARTD Watch App. [¶ 78.] In failing to disclose their inability or unwillingness to design, manufacture, and distribute the BARTD Watch App with the advertised privacy protections along with their failing to disclose their actual data collection practices, ***Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.***" (Complaint, at ¶¶77-78 [Emphasis added].)

> [¶ 82.] ***Plaintiff and members of the Class relied on the representations made by Defendants*** about the BARTD Watch App when downloading and running the BARTD Watch App. [¶ 83.] Defendants' false representations about the BARTD Watch App were acts ***likely to mislead Plaintiff and the members of the Class*** acting reasonably under the circumstances. [¶ 84.] ***Through the misrepresentations and omissions detained herein, Defendant[s] wrongfully induced Plaintiff and the other members of the Class to purchase the BARTD Watch App*** when they otherwise would not have downloaded and used the BARTD Watch App." (Complaint, at ¶¶ 82-84. [Emphasis added].)

Based on these allegations, it is indisputable Plaintiff's allegations require proof of reliance on the alleged inducements. If, and to what extent, the tens of thousands of putative class members were induced to rely on representations they may or may not have examined when clicking through in the process of downloading a free app requires examination of the impact of the alleged misrepresentations and concealments on each of them. The core of Plaintiff's claims is not suitable for adjudication on a class basis.

All these allegations about misrepresentations, concealments, conduct likely to mislead, failure to disclose after making misrepresentations triggering a duty to do so, raise highly individualized questions. Did the putative class members actually see, read or hear the misrepresentations? Were they aware of information so that corrective disclosures were required? Was allegedly concealed information relevant to their decision making process? Were they more concerned about security and willing to forego some of the privacy concerns raised by Plaintiff in her Complaint? To what degree did the alleged concealments and misrepresentations induce reliance on the part of each putative class member? All of these questions involve a person by person fact finding process which make these claims unsuitable for class action treatment.

### C. The Allegations in the Complaint Establish the Gravamen Involves Alleged Misrepresentations, Concealments, Inducement, Detrimental Reliance, which Like Overt Claims of Fraud Are Unsuitable for Class Treatment

An examination of Plaintiff's Complaint shows, while labeled as involving certain statutory claims, perhaps because they provide a basis for awarding attorneys' fees is fundamentally about misrepresentations, concealments and nondisclosures. This is garden variety fraud. The elements of fraud under California law are: (1) a misrepresentation, which includes a false representation, concealment, or nondisclosure; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*In re First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. at 603.) A plaintiff must establish "actual reliance" to recover for a claim of fraud. (*Rodman v. Safeway, Inc.*, 2014 U.S. Dist. LEXIS 31438, at *38 (N.D. Cal. Mar. 9, 2014).) Here Plaintiff alleges and therefore ultimately must prove the class members relied on misrepresentations and concealments. Plaintiff cannot hope to save the class claims based on a presumption of reliance because, although

there is some conflict on the issue among the district courts, the Ninth Circuit has held that a presumption of reliance is typically only available in "cases involving securities fraud and, even then, the presumption applies only in cases primarily involving 'a failure to disclose'—that is, cases based on omissions as opposed to affirmative misrepresentations." (*Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004); *Gonzalez v. P&G Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007) (citing *Poulos* for the same proposition).) Because this is not a securities fraud case, the interjection of allegations and ultimately proof that must proceed on an individualized basis is fatal to the class allegations.

Here, Plaintiff's claims are premised on an affirmative misrepresentations, concealments and delivery of something dramatically different than that which was promised, *i.e.*, instead of a benign transit app to facilitate use of BARTD facilities Defendants created a nefarious data collection system allowing for unauthorized government surveillance of BARTD customers. As such, Plaintiff and each putative class member needs to demonstrate he or she actually saw and relied on the purported misrepresentations when downloading the app. (*In re First Am. Home Buyers Prot. Corp. Class Action Litig., supra*, 313 F.R.D. at 603.)

> **D.    Individual Issues of Causation and Reliance Predominate Over Common Issues Here, as They Did in a Wide Variety of Cases Involving Allegations of Reliance, Rendering Class Action Treatment Impossible for Plaintiff's Claims**
>
> **1.    Introduction**

Plaintiff's claims are not amenable to class treatment because individual issues of reliance and causation for each putative class member precludes a finding of predominance under Rule 23(b)(3). Under the Federal Rules of Civil Procedure, a class action can be maintained if Rule 23(a) requirements are met and if, under Rule 23(b)(3), "questions of law or fact common to class members predominate over any questions affecting only individual members." (Fed. R. Civ. P. 23.) "Rule 23(b)(3)'s predominance inquiry asks 'whether proposed classes are sufficiently cohesive' by focusing on 'the relationship between the common and the individual issues.'" (*In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 608 (C.D. Cal. 2009) [citations omitted].) Although this is similar to Rule 23(a)(2)'s commonality inquiry, it is "more 'stringent.'" (*Id.*) When "'claims require a fact-intensive, individual analysis,'" then class certification is inappropriate because it will burden the court. (*In re*

*First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 601 (S.D. Cal. 2016) (citations omitted).)

### 2. When Proof of Reliance Because of Alleged Misrepresentations and Concealments Is Critical to Establishing Putative Class Claims, as It Is Here, Common Issues of Law and Particularly Fact Do Not Predominate

One factor "that threatens [a plaintiff's] ability to survive the predominance inquiry is reliance." (*In re Countrywide Fin. Corp. Sec. Litig., supra*, 273 F.R.D. at 608.) This is particularly true in misrepresentation cases where reliance is an essential element. (*See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) ["In cases where a plaintiff did not rely on an alleged misrepresentation, the reliance requirement will spell the difference between the success and failure of the claim."].); *see also Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) [finding that courts routinely hold misrepresentation claims are difficult to maintain on a class basis and "rarely are certified"]; (*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ["a fraud class action cannot be certified when individual reliance is an issue."].)[1] Moreover, proving reliance "'on an affirmative misrepresentation is necessarily individualized[.]'" (*Buckley v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 40866, at *51 n.8 (S.D. Cal. Apr. 23, 2010) [citations omitted.].) Similarly, proving reliance on an omission is necessarily individualized.

### 3. Even If Plaintiff Can Make the Requisite Showing of Reliance on Her Own Behalf, She Can Not Make that Showing on Behalf of the Absent Class Members

But even assuming Plaintiff personally could make such a showing, she can never demonstrate the remaining class members also saw and relied on the purported misrepresentations and were victimized by the associated concealments. The Court would necessarily need to hear from each class member to determine whether he or she relied on the alleged misrepresentation when downloading the

---

[1] As stated in the Advisory Committee Note to the 1966 Amendment to Fed. R. Civ. P. 23(b)(3) on fraud class actions, "a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or *degrees* of reliance by the persons to whom they were addressed." (emphasis added).

app or was misled by the allegedly concealed information. This would defeat both the predominance requirement and the superiority requirement because it would cause significant manageability problems. (*Zarrella v. Minn. Mut. Life Ins. Co.*, 824 A.2d 1249, 1265 (R.I. 2003) ["individual inquiries into alleged misrepresentations and subsequent reliance present insurmountable difficulties in the manageability of potential class actions, thus defeating the superiority of a class action."].)

*Rainbow Bus. Sols. v. Merch. Servs.*, 2013 U.S. Dist. LEXIS 179288 (N.D. Cal. Dec. 20, 2013) ("*Rainbow*") is instructive here. In *Rainbow*, plaintiffs asserted claims against defendants for, among other things, fraud. (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *16-18.) Plaintiffs claimed the defendants leased them overpriced credit card processing machines by misrepresenting documents to induce plaintiffs to enter into the fraudulent equipment leases. (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *7-10.) Plaintiffs argued the court could infer reliance on the defendants' misrepresentations on a class-wide basis even though plaintiffs signed the documents containing the essential terms, because "the entire scheme was structured to trick merchants into enrolling in the leases." (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *21-22.) The plaintiffs also argued that because the terms of the leases were so disadvantageous, "no merchant would have agreed to the lease unless it had relied upon Defendants' misrepresentations." (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *22.) The defendants argued reliance could not be inferred on a class-wide basis because "there is more than one logical reason that a class member might want to enter into a lease, even if it cost more than purchasing the product outright." (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *22.) For example, a class member might have evaluated prices and decided that the defendants' lease prices were comparable or better than a competitor's price. (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *22.) Judge Wilken agreed that reliance could not be presumed and held that individual issues of reliance will predominate with respect to individual class members' reliance on the purported fraud. (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *23.) Thus, the court denied the plaintiffs' motion for class certification for their fraud claims. (*Id.*, 2013 U.S. Dist. LEXIS 179288 at *23.)

*Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009) also provides guidance here. In *Picus v. Wal-Mart, supra*, the plaintiff sued the defendants for fraud because they allegedly sold pet food products to consumers as "Made in the USA," when in fact the product components were

manufactured outside the United States. (*Id.*, 256 F.R.D. at 654.) The plaintiff sought to pursue the claim as a class action on behalf of all individuals in California and seven other states who purchased one or more of the food products designated as "Made in the USA" within a specified date range. (*Id.*, 256 F.R.D. at 654-55.) Plaintiff argued common issues predominate because all the implicated states prohibit misrepresentations relating to geographic origin in connection with goods or services. (*Id.*, 256 F.R.D. at 656.) Defendants argued individualized issues as to "causation, reliance, and statutes of limitations predominate and defeat certification" and a "class action is not the superior means of litigation because individual issues would have to be resolved through numerous mini-trials." (*Id.*, 256 F.R.D. at 656.)

The court analyzed causation and reliance for plaintiff's fraud claims and reasoned that "establishing causation through reliance depends on whether each class member relied on the 'Made in the USA' label." (*Id.*, 256 F.R.D. at 658.) In its analysis, the *Picus v. Wal-Mart, supra,* court holds that many consumers purchasing the defendants' pet food products may not have seen the "Made in the USA" label, so reliance could not be established for those consumers. (*Id.*, 256 F.R.D. at 658.) Moreover, consumers who did see the label "may or may not have relied upon the representation that the product was made in the United States." (*Id.*, 256 F.R.D. at 658.) The court reasoned a consumer's choice to purchase the pet food product could have been based on any number of reasons unrelated to the "Made in the USA" label, such as "price, convenience, or a pet's preference for the product." (*Id.*, 256 F.R.D. at 658.) So although some consumers could have purchased the pet food product solely or partially because of the "Made in the USA" label, "any number of reasons exist as to why a particular class member purchased" the product. The court held that individualized issues as to reliance would have a significant effect on the case, where the court "would have to consider whether each class member relied on or even saw the "Made in the USA" label when purchasing the defendants' pet food products. (*Id.*, 256 F.R.D. at 659.) Thus, "individual issues of reliance and damages predominate over the common issues related to Defendants' actions in allegedly misrepresenting the geographic origin" of the defendants' products, which negates the efficiency of class treatment and increases the risk of confusion. (*Id.*, 256 F.R.D. at 659.) The court holds plaintiff's proposed class fails under Rule 23(b)(3) as a matter of law.

1 | The same types of individualized determinations that precluded class treatment in *Picus v. Wal-Mart, supra,* preclude class treatment here. The Court will have to evaluate whether putative class members looked at the allegedly deceptive materials. As in *Picus v. Wal-Mart, supra,* the Court will have to determine whether the allegedly deceptive materials had any impact on the transit user's decision to download the BARTD Watch App. Just as the "Made in the USA" label may have been irrelevant to people purchasing the dog food, so too, the privacy concerns Plaintiff raises may be irrelevant to at least a significant portion of those downloading the BARTD Watch App. This inquiry will be compounded by issues of fact unique to each class member as to whether their concerns about convenience or security overrode any concern they may have had about privacy.

Like *Rainbow* and *Picus*, Plaintiff's claims also fail under Rule 23(b)(3) as a matter of law. Even if Plaintiff were able to demonstrate that s*he* saw and relied on Defendants' purported misrepresentations, the Court cannot presume the same for the other putative class members because this is not a securities case based on a fraudulent omission claim such that the Court can adopt a presumption of reliance. (*Poulos v. Caesar's World, supra*, 379 F.3d at 666.)

Indeed, the Court will need to hear from each and every putative class member to determine, among other things, whether: (1) he or she even looked at the EULA and Privacy Policy before clicking through and downloading the app, (2) whether he or she read the specific language Plaintiff characterizes as misleading and in fact relied on that language when deciding to download the app or failed to examine the Privacy Policy, which, in fact, makes full disclosure about what is collected, because as Plaintiff alleges operation of the App downloading process obscures access to what is readily available on the internet.

There are many reasons why any given transit user might have downloaded the app. Some transit users might have downloaded the app without reading either the EULA or Privacy Policy or both, while some others might have read them and not understood them. Some transit users might have read the EULA or Privacy Policy and considered them to be immaterial to the uses they intended to put the app. The list of idiosyncratic behaviors rendering class treatment unsuitable goes on and on.

The point is not that BARTD knows the precise reasons why each putative class member downloaded the app. To the contrary—without transit user-specific evidence, there is no way this

1 Court would know which (if any) transit users saw and relied on the provisions in the EULA or Privacy Policy Plaintiff alleges are problematic. Without such evidence, it would be impossible for the Court to adjudicate Plaintiff's claims because it would not know what each putative class member's reason was for downloading the app.

Also, because each putative class member downloaded the app on a different date each class member would present a unique statute of limitations issue. As the Supreme Court noted in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1998), "[n]o reading of [Rule 23] can ignore the [Rules Enabling] Act's mandate that rules of procedure "shall not abridge, enlarge or modify any substantive right …."" (*Id.*, 527 U.S. at 848 [quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) and 28 U.S.C. § 2072(b).].) Thus, even if Plaintiff's claims are not time barred, putative class members cannot simply bootstrap their claims onto Plaintiff's claims when they otherwise would not be able to sue BARTD individually.

Given that reliance and causation are crucial elements of fraud, and because these elements cannot be proven on a class-wide basis because they require evidence from each and every transit user who downloaded the app, it would be impossible to certify Plaintiff's claims for class treatment. The class action claims must therefore be stricken now before the parties needlessly devote more time, money, and judicial resources litigating them.

## IV.    CONCLUSION

For the reasons set forth above, BARTD respectfully request that this Court to strike the class allegations enumerated in the accompanying Notice of Motion and Motion from Plaintiff's Complaint with prejudice.

DATED: June 16, 2017            LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    /s/ Gordon J. Calhoun
       Gordon J. Calhoun
       René I. Gamboa
       Attorneys for Defendant, SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT

# FEDERAL COURT PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN BERNARDINO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 650 East Hospitality Lane, Suite 600, San Bernardino, CA 92408. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On June 16, 2017, I served the following document(s): **DEFENDANT SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S CLASS ACTION ALLEGATIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 12(f)**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Eve-Lynn Rapp
erapp@edelson.com
Nina Eisenberg
neisenberg@edelson.com
EDELSON PC
123 Townsend Street
San Francisco, CA  94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

The documents were served by the following means:

☒ (BY U.S. MAIL) I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid.

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 16, 2017, at San Bernardino, California.

Arlene Juarez Patino