1
2
3
4
5
6
7

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

8
9
10
11

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

12
13
14
15
16
17
18
19
20

| | |
|---|---|
| PAMELA MORENO, individually and on behalf of all others similarly situated, | Case No. 3:17-cv-02911-JSC |
| *Plaintiff,* | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT** |
| *v.* | |
| SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, a public entity, | Judge:   Hon. Jacqueline Scott Corley |
| *Defendant.* | Date:    October 4, 2018 |
| | Time:    9:00 a.m. |

21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................................... 1

II.  BACKGROUND ....................................................................................... 2

    A.  Plaintiff's Allegations ................................................................... 2

    B.  The Procedural History of the Litigation ....................................... 3

    C.  The Discovery Undertaken and the Parties' Settlement
       Conference ...................................................................................... 4

III.  THE TERMS OF THE SETTLEMENT AGREEMENT ............................. 5

IV.  THE PROPOSED SETTLEMENT CLASS SHOULD BE
    CERTIFIED ............................................................................................. 6

    A.  The Settlement Class is Sufficiently Numerous ............................... 7

    B.  Settlement Class Members Share Common Questions of Law
       and Fact .......................................................................................... 7

    C.  Plaintiff's Claims are Typical of the Settlement Class
       Members' Claims ............................................................................ 8

    D.  Plaintiff and Class Counsel Will Adequately Represent the
       Settlement Class .............................................................................. 9

    E.  The Proposed Settlement Class Satisfies the Requirements of
       Rule 23(b)(2) .................................................................................. 10

V.  PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS
    COUNSEL ............................................................................................... 11

VI.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY
    APPROVAL ............................................................................................. 12

VII.  SINCE THE SETTLEMENT PROVIDES INJUNCTIVE RELIEF
    ONLY AND DOES NOT RELEASE ANY MONETARY CLAIMS,
    NO NOTICE IS REQUIRED ................................................................... 15

VIII.  CONCLUSION ........................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor,*
  521 U.S. 591 (1997)................................................................................................ 6, 7

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)................................................................................................ *passim*

**Federal Court of Appeals Cases:**

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ............................................................................... 8, 9

*Kanter v. Warner-Lambert Co.,*
  265 F.3d 853 (9th Cir. 2001) .................................................................................. 10

*Lane v. Facebook, Inc.,*
  696 F.3d 811, 818 (9th Cir. 2012) ......................................................................... 12

*Parra v. Bashas', Inc.,*
  536 F.3d 975 (9th Cir. 2008) .................................................................................. 6

*Rannis v. Recchia,*
  380 F. App'x 646 (9th Cir. 2010) ........................................................................... 15

*Walters v. Reno,*
  145 F.3d 1032, 1047 (9th Cir. 1998)...................................................................... 8

*Wolin v. Jaguar Land Rover N. Am. LLC,*
  617 F.3d 1168 (9th Cir. 2010) ............................................................................... 8

**Federal District Court Cases:**

*Ambrosia v. Cogent Commun., Inc.,*
  312 F.R.D. 544 (N.D. Cal. 2016).......................................................................... 8

*Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.,*
  No. 12-cv-05259-JST, 2013 WL 6145706 (N.D. Cal. Nov. 21, 2013)........................... 13

*Bickley v. Schneider Nat'l, Inc.,*
  No. 08-cv-05806-JSW, 2016 WL 4157355 (N.D. Cal. April 25, 2016)......................... 14

*Celano v. Marriott Int'l, Inc.,*
  242 F.R.D. 544 (N.D. Cal. 2007)........................................................................... 7

*Cordy v. USS-Posco Indus.,*

No. 12-cv-00553-JST, 2014 WL 212587 (N.D. Cal. Jan 17, 2014) ............................. 12

*Cotter v. Lyft, Inc.,*
176 F. Supp. 3d 930 (N.D. Cal. 2016) ................................................................. 14

*Dilts v. Penske Logistics, L.L.C.,*
No. 08-cv-0318-CAB, 2014 WL 12515159 (S.D. Cal. July 11, 2014) ........................... 14

*Harris v. Vector Mktg. Corp.,*
No. 08-cv-5198, 2011 WL 1627973  (N.D. Cal. Apr. 29, 2011) .................................... 12

*Hopwood v. Nuance,*
No. 13-cv-02132, Dkt. 115 (N.D. Cal. Oct. 28, 2015) ..................................................... 11

*In re 24 Hour Fitness Prepaid Membership Litig.,*
No. 16-cv-01668-JSW, Dkt. 155 (N.D. Cal. June 8, 2018) ............................................ 11

*In re High-Tech Employee Antitrust Litig.,*
No. 11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ...................................... 12

*In re LinkedIn User Privacy Litig.,*
No. 12-cv-03088-YGR, Dkt. 136 (N.D. Cal. Jan. 29, 2015) .......................................... 11

*In re Netflix Privacy Litig.,*
No. 11-cv-00379-EJD (N.D. Cal.) ...................................................................... 11

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.,*
282 F.R.D. 486 (C.D. Cal. 2012) ...................................................................... 11

*In re Tableware Antitrust Litig.,*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................12, 13

*Kanawi v. Bechtel Corp.,*
254 F.R.D. 102 (N.D. Cal. 2008) ...................................................................... 7, 10

*Kim v. Space Pencil, Inc.,*
No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ................ 7, 8, 14, 15

*Kline v. Dymatize Enters., LLC,*
No. 15-CV-2348-AJB-RBB, 2016 WL 6026330 (S.D. Cal. Oct. 13, 2016) ............... 8, 10

*Lilly v. Jamba Juice Co.,*
No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ................. 6, 12, 15

*Moshogiannis v. Sec. Consultants Grp., Inc.,*
No. 10-cv-05971-EJD, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012) ............................ 7, 13

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.,*
No. 3:10–cv–1777 AJB (NLS), 2012 WL 3991734 (S.D. Cal. Aug. 27,

2012) ...................................................................................................... 11

*Stathakos v. Columbia Sportswear Co.*,
    No. 4:15-CV-04543-YGR, 2018 WL 582564 (N.D. Cal. Jan. 25, 2018) ...................13, 15

**Statutes:**

Cal. Civ. Code. §§ 1750, *et seq.* ...................................................................................... 3

Cal. Gov't Code § 53166 ......................................................................................1, 3, 5, 8

Cal. Penal Code § 637.7 ................................................................................................... 4

**Federal Rules:**

Federal Rule of Civil Procedure 12 ................................................................................. 4

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Sources:**

Herbert Newberg & Alba Conte,
    Newberg on Class Actions § 11.25 (4th ed. 2002) ........................................ 12

Manual for Complex Litigation (Second) § 30.44 (1985) ............................................ 12

Manual for Complex Litigation (Fourth) § 21.633 (2004) .......................................... 7

1

## NOTICE OF MOTION

2      **PLEASE TAKE NOTICE** that on October 4, 2018, at 9:00 a.m., or at such other time as

3   may be set by the Court, Plaintiff Pamela Moreno will appear, through counsel, before the

4   Honorable Jacqueline Scott Corley, or any Judge sitting in her stead, in Courtroom F, 15th Floor,

5   450 Golden Gate Avenue, San Francisco, CA 94102, and then and there, respectfully move the

6   Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of a

7   proposed class action settlement reached between herself and Defendant San Francisco Bay Area

8   Rapid Transit District.

9      Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities

10   filed herewith, the exhibits attached thereto, including the Parties' proposed class action settlement

11   agreement, the Declaration of Todd Logan filed simultaneously herewith, and the record in this

12   matter, along with any oral argument that may be presented to the Court and evidence submitted

13   in connection therewith.

14                                    Respectfully Submitted,

15                                    **PAMELA MORENO,** individually and on behalf
                                      of all others similarly situated,
16

17   Dated: August 24, 2018           By: /s/ Todd Logan
18                                     One of Plaintiff's Attorneys

19                                     Rafey S. Balabanian (SBN 315962)
                                       rbalabanian@edelson.com
20                                     Todd Logan (SBN 305912)
                                       tlogan@edelson.com
21                                     EDELSON PC
                                       123 Townsend Street, Suite 100
22                                     San Francisco, California 94107
                                       Tel: 415.212.9300
23                                     Fax: 415.373.9435

24                                     *Counsel for Plaintiff and the Putative Class*

25

26

27

28

I.     INTRODUCTION

Plaintiff Pamela Moreno ("Plaintiff" or "Moreno") filed her Second Amended Class Action Complaint against Defendant San Francisco Bay Area Rapid Transit District ("BART" or "Defendant") to put an end to BART's collection of individuals' private cell phone identifiers through the BART Watch mobile application (the "App"). Specifically, Plaintiff alleged that when the BART Watch App was downloaded onto users' cell phones, the App secretly collected the phone's unique International Mobile Equipment Identity ("IMEI") number and geolocation information without users' consent. Plaintiff further alleged that Defendant compiled that data, along with other personal identifiers, to create the kind of detailed information database that enabled Defendant to periodically track its users' precise locations and identities. Through that conduct, Plaintiff claimed that Defendant violated the Cellular Communications Interception Act, Cal. Gov't Code § 53166 ("CCIA").

From the outset of this case, one of Plaintiff's primary goals was to obtain injunctive relief that would put a stop to Defendant's collection of sensitive IMEI data. And, as a result of her vigorous pursuit of this action, Plaintiff has achieved that goal: Defendant has ceased collecting users' IMEI numbers through the App and has agreed, under the Settlement, to the entry of comprehensive injunctive relief prohibiting it from collecting such information in the future. Crucially, Plaintiff obtained this important injunctive relief under the proposed Settlement without releasing *any* of the Settlement Class Members' claims for monetary relief, meaning class members retain the right to bring suit against Defendant for the full extent of any damages they believe they are entitled to for the conduct alleged in this case. In the end, and as explained below, the meaningful and immediate injunctive relief secured by the Settlement is an excellent result for the Settlement Class—especially in light of the risks of further litigation—and warrants preliminary approval.

The proposed settlement was reached after significant adversarial proceedings and through an arms-length negotiation. Specifically, prior to any settlement negotiations, the Parties engaged in substantial adversarial motion practice (including two fully briefed motions to dismiss), engaged in significant informal discovery, and obtained discovery from a prior

1  defendant, Elerts Corp., after a subpoena process. Beyond that, the negotiations were at all times

2  conducted in good faith and at arms' length, as the Parties reached their agreement in principle

3  during a formal settlement conference before Chief Magistrate Judge Spero. At bottom, the

4  proposed settlement was achieved only after the Parties were well-informed of all relevant facts,

5  after they engaged in arm's length negotiations with the helpful aid of Chief Magistrate Judge

6  Spero, and after Plaintiff's counsel ("Class Counsel") could be certain that the deal represents the

7  best possible result for the Settlement Class given the circumstances of this case.

8      Consequently, Plaintiff respectfully requests that the Court (i) certify the proposed

9  Settlement Class for settlement purposes, (ii) appoint Plaintiff as Class Representative and her

10  counsel as Class Counsel, (iii) grant preliminary approval of the Settlement, and (iv) schedule the

11  final approval hearing.

12  **II.    BACKGROUND**

13      **A.    Plaintiff's Allegations.**

14      According to the Pew Research Center, 95 percent of Americans own a cell phone, 77

15  percent own a smartphone, and Americans "treat [phones] like body appendages" by carrying

16  them around at all times. Dkt. 63, Second Amended Class Action Complaint ("SAC") ¶ 1.

17  Hence, cell phones are an easy way to track individuals. One way that government agencies track

18  individuals through their cell phones is through International Mobile Equipment Identity

19  numbers (IMEI numbers). *Id.* ¶¶ 33-38. Because an IMEI is a persistent, unique device identifier,

20  "if the government was able to obtain a database of IMEIs linked with persons' identities, it

21  could, in real time, identify" where an individual was. *Id.* ¶ 19.

22      Here, Plaintiff alleged that is precisely what Defendant BART accomplished through its

23  mobile phone application, the BART Watch App. *Id.* Defendant BART is a governmental agency

24  that oversees regional light rail operations in the Bay Area and employs a police force of nearly

25  300 police officers. *Id.* ¶ 22. In 2014, Defendant created the BART Watch App ostensibly as a

26  discreet way for riders to communicate with police officers and report incidents anonymously or

27  otherwise. *Id.* ¶ 23. The App has been popular—since its launch, between 10,000 and 50,000

28  people have downloaded it from the Google Play store alone. *Id.* ¶ 27. During the initial setup of

the App, users are instructed to provide their contact information, although the provision of that information is optional. *Id.* ¶ 30. If a user provides their contact information, it is transmitted (along with their phone's unique numeric identifier) to Defendant. *Id.* ¶¶ 33–35. At the same time, Defendant creates and transmits a unique "clientid," associating the contact information with the unique mobile device identification numbers. *Id.* ¶ 34. If a transit user declined to provide the optional contact information, Defendant nonetheless programmed the App to create a "clientid" matching a phone's unique identifier with other tracking data, such as geolocation. *Id.* ¶ 35. This location data is highly detailed and includes such information as "course," "elevation," "speed," as well as users' latitude and longitude. *Id.* ¶¶ 36-38.

Plaintiff further alleges that the App is programmed to periodically transmit each user's clientid and precise location information to Defendant's servers, and does so even if a user chooses to submit an supposedly "anonymous" tip. *Id.* ¶¶ 36, 38. This has enabled Defendant to use the App "to periodically track the precise locations" of commuters like Plaintiff and tens of thousands of other Californians who have downloaded the App. *Id.* ¶¶ 4, 5, 27, 31, 39, 42. In other words, unbeknownst to riders, and using the invasive compilation of information set out above, Plaintiff alleges that the BART Watch App was programmed to secretly collect and transit users' unique cellular identifiers, periodically monitor users' locations, and track the identities of anonymous reporters. (*Id.* ¶ 31.)

**B.    The Procedural History of the Litigation.**

On May 22, 2017, Plaintiff filed a putative class action against Defendant and Elerts Corp. ("Elerts"), a software company Defendant partnered with to develop the App, in the United States District Court for the Northern District of California. Dkt. 2. Plaintiff's complaint alleged that the App collected Plaintiff's mobile phone's geolocation data and IMEI number without her consent and in violation of California's Cellular Communications Interception Act ("CCIA"), Cal. Gov't Code § 53166, California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, Plaintiff's privacy rights under the California Constitution, and rendered Defendant and Elerts liable for Intrusion Upon Seclusion. *Id.*

On August 18, 2017, Plaintiff filed her First Amended Class Action Complaint ("FAC"), alleging substantially similar facts but replacing her prior claim under the CLRA for a claim under California's Invasion of Privacy Act, Cal. Penal Code § 637.7. Dkt. 36. On September 15, 2017, Defendant and Elerts separately moved to dismiss Plaintiff's FAC under Federal Rule of Civil Procedure 12(b)(6), each arguing that Plaintiff had consented to their conduct and that the FAC otherwise failed to state claim for relief. Dkt. 41. On December 14, 2017, after full briefing, the Court ruled that while the FAC plausibly pleaded Plaintiff's lack of consent to Defendant's and Elerts' actions, it did not state a viable claim for relief. Dkt. 61. Accordingly, the Court dismissed the FAC without prejudice on December 14, 2017. *Id.* at 1.

On January 16, 2018, Plaintiff filed her Second Amended Class Action Complaint ("SAC"), naming only Defendant BART and stating a single claim for relief under the CCIA. Dkt. 63. Plaintiff also added additional factual allegations to the SAC regarding the legislative history of the CCIA and how cellular communication interception technologies—specifically Stingrays—operate. *Id.* On February 12, 2018, Defendant filed a motion to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to allege the App was a "device" or that the app "intercepts" mobile telephony data within the meaning of the CCIA. Dkt. 66. Plaintiff filed an opposition brief on March 7, 2018 disputing each of Defendant's arguments. Dkt. 70. After briefing closed, the Court heard oral argument on the SAC on March 29, 2018, and—without ruling on Defendant's motion—referred the case to Chief Magistrate Judge Spero for a settlement conference. Dkts. 73, 74.

**C.    The Discovery Undertaken and the Parties' Settlement Conference.**

In advance of the settlement conference before Chief Magistrate Judge Spero, the Parties engaged in an exchange of informal discovery, and Plaintiff issued subpoenas on former defendant Elerts Corp. that led to Plaintiff's acquisition of crucial settlement-related information. Exhibit 1, Declaration of Todd Logan ("Logan Decl.") ¶ 5. Together, Defendant and Elerts provided Plaintiff with the information necessary to adequately assess the case and engage in productive settlement negotiations. (*Id.* ¶ 6.)

1   With that information in hand, the parties attended a settlement conference before Judge

2   Spero on June 28, 2018. (*Id* ¶ 7.; *See* dkt. 87.) After hours of arms' length negotiations, and with

3   the helpful guidance of Chief Magistrate Judge Spero, the Parties reached an agreement in

4   principle as to the resolution of this matter, and signed a non-binding memorandum of

5   understanding that day. *Id*. In the weeks following the settlement conference, the Parties

6   negotiated the final terms of the agreement and formally executed the written Settlement

7   Agreement now before the Court. *Id.* ¶ 8; Exhibit 2, Class Action Settlement Agreement

8   ("Agreement").

9   **III.   THE TERMS OF THE SETTLEMENT AGREEMENT**

10   For the Court's convenience, the key terms of the Agreement are briefly summarized as

11   follows:

12   **A.   Settlement Class Definition:** The settlement provides for an injunctive

13   settlement class of all Persons in the United States who, on or after January 1, 2016, but before

14   the date of Preliminary Approval, had their mobile device's IMEI or geolocation collected by the

15   BART Watch App. *See* Agreement § 1.20.

16   **B.   Injunctive Relief:** BART has agreed that when a BART Watch App user submits

17   a "report," it will not obtain or collect any "International Mobile Equipment Identity" numbers,

18   and will only obtain or collect a limited set of information as laid out in the Settlement

19   Agreement. *Id.* § 2.1. BART has further agreed that if it uses "Cellular Communications

20   Interceptions Technology" in the future, it will comply with all requirements set forth under the

21   Cellular Communications Interception Act, Cal. Gov't Code § 53166(b)-(c). *Id.* BART will also

22   make all reasonable efforts not to retain geolocation information from the BART Watch App for

23   longer than three years, and will make all reasonable efforts in the future not to obtain any

24   information other than the information disclosed under the Agreement. *Id.*

25   **C.   Incentive Award to Plaintiff:** In recognition of Plaintiff's time and effort serving

26   as class representative, the Parties have agreed that BART may not oppose Plaintiff's request for

27   an incentive award in an amount up to two thousand five hundred dollars ($2,500), which is the

28

amount of statutory damages available to a Plaintiff under the CCIA. *Id.* § 7.2 Any incentive award request by Plaintiff, of course, will be subject to Court approval.

**D.    Payment of Attorneys' Fees and Expenses:** The Parties have agreed that BART may not oppose Class Counsel's request for an award of reasonable attorneys' fees and expenses in an amount up to fifty-seven thousand five hundred dollars ($57,500). *Id.* § 7.1. Any fee award request by Class Counsel, of course, will be subject to Court approval. Class Counsel will submit a fee petition no later than fourteen (14) days prior to the Final Approval Hearing. *Id.*

**E.    Class Notice:** Because the Settlement Agreement is made only under Federal Rule of Civil Procedure 23(b)(2), the Parties agree that notice to the class is not required and will not be provided. *Id.* § 4.1; *see Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027, at *8–9 (N.D. Cal. Mar. 18, 2015).

**F.    Release of Injunctive Claims:** In exchange for the injunctive relief described above, BART and its related entities will receive a release of all claims for injunctive relief related to Settlement Class Members' use of the BART Watch App. §§ 1.17–1.19, 3.1–3.2. To be clear, the release of the Settlement Class Members' claims **will not extend to any claims for monetary relief**, and the Settlement Class Members will retain all rights to bring any damages related to the allegations in this case on an individual or class basis. *Id.* ¶¶ 1.17, 3.1–3.2.

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Before granting preliminary approval of a proposed class action Settlement, the Court must first determine whether the Settlement Class is appropriate for certification. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A party seeking class certification must satisfy the factors enumerated in Federal Rule of Civil Procedure 23(a) by demonstrating that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008); Fed. R. Civ. P. 23(a)(1)-(4).

In addition to satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; Manual for Complex Litigation (Fourth) § 21.633 (2004). In this case, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(2). Certification under this provision applies when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *see also* Fed. R. Civ. P. 23(b)(2).

Ultimately, district courts have broad discretion to determine whether certification of a class action lawsuit is appropriate. *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 107 (N.D. Cal. 2008). As described in detail below, the proposed Settlement Class satisfies all of these prerequisites and should therefore be certified.

### A.      The Settlement Class is Sufficiently Numerous.

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In demonstrating numerosity, plaintiffs are not required to state the exact number of potential class members, and numerosity is usually met when the class contains at least forty members. *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *2 (N.D. Cal. Nov. 28, 2012); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members"); *Moshogiannis v. Sec. Consultants Grp., Inc.,* No. 10-cv-05971-EJD, 2012 WL 423860, at *3 (N.D. Cal. Feb. 8, 2012) (holding that numerosity is satisfied by class of 254 members). There is no question here that the Settlement Class is sufficiently numerous. The BART Watch App was downloaded by tens of thousands of individuals, a substantial proportion of whom had their IMEI number collected by the BART Watch App. Logan Decl. ¶ 3. The Settlement Class easily satisfies the numerosity requirement.

### B.      Settlement Class Members Share Common Questions of Law and Fact.

The second requirement of class certification asks whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is construed permissively and is demonstrated when the claims of all class members "depend upon a common contention."

*Dukes*, 564 U.S. at 338 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the claims of class members stem from the same legal and factual questions, including: (i) whether Defendant's BART Watch App is cellular communications interception technology; (ii) whether Defendant obtained consent to collect Plaintiff's and the Settlement Class's unique numeric cellular identifiers and physical locations; (iii) whether Defendant's conduct violated Cal. Gov't Code § 53166; (iv) whether Plaintiff and the Settlement Class members are entitled to equitable relief as a result of Defendant's conduct; (v) whether Defendant used the BART Watch App to determine the location or movement of Plaintiff and members of the Settlement Class; and (vi) whether Defendant's App is a "device," as the term is used in Cal. Gov't Code § 53166(a)(1). These common questions—and there are many more—are sufficient to establish commonality. *Dukes*, 564 U.S. at 359 ("[E]ven a single common question will do"); *see also Kim*, 2012 WL 5948951, at *2 ("It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.") (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). Accordingly, commonality is satisfied.

### C.   Plaintiff's Claims are Typical of the Settlement Class Members' Claims.

The third element of Rule 23(a)—typicality—directs courts to focus on whether the plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical where it arises from the same course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *See Ambrosia v. Cogent Commun., Inc.,* 312 F.R.D. 544, 554 (N.D. Cal. 2016) (noting that typicality emphasizes "whether [named plaintiffs] other members have the same or similar injury . . . and whether other class members have been injured by the same course of conduct.") (citations omitted). Ultimately, this requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Here, Plaintiff's claims are identical to those of the Settlement Class. Plaintiff Moreno alleges that BART collected her mobile phone's geolocation data and IMEI number without her consent and in violation of the CCIA, and that Defendant collected this information in the exact

1   same manner, and for the exact same reason, from every other member of the Settlement Class.

2   Thus, Plaintiff's claims are unquestionably typical of those of the Settlement Class and the

3   pursuit of her claims will necessarily advance the interests of the absent Settlement Class

4   members. *See Kline v. Dymatize Enters., LLC*, No. 15-CV-2348-AJB-RBB, 2016 WL 6026330,

5   at *4 (S.D. Cal. Oct. 13, 2016) ("Because the present motion presents no difference between

6   Plaintiffs' claims and those of the proposed settlement class, the Court finds typicality is

7   satisfied."). Typicality is readily satisfied.

8       **D.**    **Plaintiff and Class Counsel Will Adequately Represent the Settlement Class.**

9       Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly

10  and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For adequacy, the Court

11  must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

12  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

13  on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Appointing a plaintiff with typical claims who

14  has retained adequate counsel is usually sufficient. *Dukes*, 564 U.S. at 349 n.5 (discussing how the

15  fulfillment of the typicality requirement usually also supports a finding of adequacy because an

16  adequate representative will have claims that are typical of those of the class).

17      Here, Plaintiff shares the same interest as the other members of the Settlement Class, since

18  they were harmed in the same way, and there is no evidence of any conflict of interest. Moreover,

19  Plaintiff Moreno has worked alongside Class Counsel throughout the pendency of this case—

20  reviewing each of the three complaints filed as well as other documents, equipping her attorneys

21  with the information needed to pursue her claims, and responding to requests for additional

22  information throughout the motion and settlement processes—thus confirming her dedication to

23  vigorously prosecuting the Settlement Class's interests. Logan Decl. ¶ 9.

24      Similarly, Plaintiff is represented by highly qualified counsel who have been committed to

25  the prosecution of this case from the outset. As discussed below *infra* Section V, Class Counsel

26  Rafey S. Balabanian and Todd Logan have extensive experience litigating class actions of similar

27  size, scope, and complexity to this class action and have the resources necessary to see this

28  litigation through to its conclusion. Logan Decl. ¶ 10. Moreover, Class Counsel have vigorously

prosecuted Plaintiff's and the proposed class's claims, as evidenced by their extensive investigation of the App, substantial motion practice, and diligent efforts negotiating the ultimate Settlement. *Id. See, e.g., Kanawi*, 254 F.R.D. at 111 (finding adequacy met where plaintiffs "demonstrated their commitment to the action" and their attorneys were "qualified to represent the class"). The adequacy requirement is therefore readily satisfied.

### E.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(2).

In addition to the four requirements for certification under Rule 23(a), the proposed Settlement Class also satisfies the additional requirement imposed under Rule 23(b)(2), that Defendant has "acted or refused to act on grounds generally applicable to the class," thereby making injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 860 (9th Cir. 2001). The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes,* 564 U.S. at 360

Here, preliminary certification of the Settlement Class under Rule 23(b)(2) is proper for at least two reasons. First, the CCIA provides for injunctive relief, and Plaintiff seeks such relief in her Second Amended Class Action Complaint. SAC ¶ 68; *Kline*, WL 6026330, at *4 (finding certification under 23(b)(2) appropriate where the operative law provides for and plaintiff requests injunctive relief). Second, the injunctive relief sought by Plaintiff applies generally to each Settlement Class member. Defendant's alleged unlawful conduct—the collection of App users' geolocation data and IEMI numbers—was, for all intents and purposes, identical for each member of the Settlement Class. It is this common practice that caused the class-wide injury, and which also is the subject of the Settlement Class's claims for injunctive relief under the CCIA. BART's agreement that it will no longer collect any IMEI numbers and only obtain a limited, defined set of information from its users will affect all of the Settlement Class Members equally. BART has also agreed that if it uses "Cellular Communications Interceptions Technology" in the future, it will comply with all requirements under the CCIA, and it will make all reasonable efforts not to retain geolocation information for a period of longer than three years. In this

1   circumstance, the "agreed-upon injunctive relief will redress an alleged group-wide injury," and

2   makes class certification under Rule 23(b)(2) appropriate. *Sarabri v. Weltman, Weinberg & Reis*

3   *Co., L.P.A.*, No. 3:10–cv–1777 AJB (NLS), 2012 WL 3991734, at *7 (S.D. Cal. Aug. 27, 2012).

4   **V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL**

5          Under Rule 23, "a court that certifies a class must appoint class counsel…[who] must fairly

6   and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). In appointing class

7   counsel, the court must consider: (1) the work in identifying or investigating potential claims; (2)

8   counsel's experience in handling class actions or other complex litigation and the type of claims

9   asserted in the case; (3) counsel's knowledge of the applicable law; and (4) the resources class

10  counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *see, e.g.*, *In re*

11  *Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 492

12  (C.D. Cal. 2012). The Parties seek the appointment of Rafey S. Balabanian and Todd Logan of

13  Edelson PC as class counsel.

14         Here, proposed Class Counsel readily satisfies the criteria of Rule 23(g). First, they have

15  devoted—and will continue to devote—a significant amount of time and effort to this litigation,

16  including through their initial, technologically advanced investigation of Plaintiff's allegations,

17  substantive motion practice, and settlement discussions. Logan Decl. ¶ 11. Second, proposed Class

18  Counsel have extensive experience in similar complex litigation and have been appointed class

19  counsel in numerous consumer class actions throughout the country, many of them in this District.

20  *Id.;* see also Exhibit 3, Firm Resume of Edelson PC; *In re 24 Hour Fitness Prepaid Membership*

21  *Litig.*, No. 16-cv-01668-JSW, Dkt. 155 (N.D. Cal. June 8, 2018) (appointing Edelson PC as class

22  counsel in case filed by Mr. Logan and settled by Mr. Balabanian, finding that Edelson PC

23  "adequately represented the Settlement Class for the purposes of litigating this matter and entering

24  into and implementing the Settlement Agreement."); *Hopwood v. Nuance*, No. 13-cv-02132, Dkt.

25  115 (N.D. Cal. Oct. 28, 2015) (appointing Edelson PC as class counsel); *In re LinkedIn User*

26  *Privacy Litig.*, No. 12-cv-03088-YGR, Dkt. 136 (N.D. Cal. Jan. 29, 2015) (appointing Edelson PC

27  lead class counsel); *In re Netflix Privacy Litig.*, No. 11-cv-00379-EJD (N.D. Cal.) (appointing

28  Edelson PC interim lead counsel, noting that while two other firms had impressive resumes and

1   litigation experience, Edelson's "significant and particularly specialized expertise in . . . class

2   action renders them superior to represent the putative class.").

3         In short, proposed Class Counsel have the resources necessary to conduct litigation of

4   this nature, have already diligently investigated the claims at issue in this action and dedicated

5   substantial resources to the case, and will continue to do so throughout its conclusion.

6   Accordingly, Rafey S. Balabanian and Todd Logan of Edelson PC meet the adequacy

7   requirements of Rule 23, and should be appointed Class Counsel.

8   **VI.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

9         Rule 23(e) requires judicial approval of a proposed class action settlement based on a

10   finding that the agreement is "fair, reasonable, and adequate," *see Lane v. Facebook, Inc.*, 696

11   F.3d 811, 818 (9th Cir. 2012), which involves a well-established two-step process: preliminary

12   and final approval. Fed. R. Civ. P. 23(e); *see also* Herbert Newberg & Alba Conte, Newberg on

13   Class Actions § 11.25 at 3839 (4th ed. 2002). The first step is a preliminary inquiry to ensure that

14   the settlement is not "unacceptable at the outset." *Id.*; *see Lilly*, 2015 WL 1248027, at * ("The

15   proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a

16   plaintiff's fiduciary obligations to the class."). Courts in this District grant preliminary approval

17   where: "(1) the proposed settlement appears to be the product of serious, informed non-collusive

18   negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment

19   to class representatives or segments of the class, and (4) falls within the range of possible

20   approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting

21   Manual for Complex Litigation (Second) § 30.44 (1985)). *See also Cordy v. USS-Posco Indus.*,

22   No. 12-cv-00553-JST, 2014 WL 212587, at *2 (N.D. Cal. Jan 17, 2014) (quoting *Tableware*). In

23   this case, the proposed Settlement readily meets each of these requirements.

24         First, settlements that are the result of hard-fought litigation and arm's length negotiations

25   among experienced counsel, such as this one, are "entitled to an initial presumption of fairness."

26   *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal.

27   Oct. 30, 2013) (internal citations and quotations omitted); *see also Harris v. Vector Mktg. Corp.*,

28   No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Settlement negotiations are

generally found to be non-collusive when reached with the assistance of a third-party neutral, *see e.g.*, *Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*, No. 12-cv-05259-JST, 2013 WL 6145706, at \*7 (N.D. Cal. Nov. 21, 2013), and are found to have been informed where the parties exchanged evidence and information prior to negotiations. *See Moshogiannis*, 2012 WL 423860, at \*5 (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties conducted a significant amount of informal discovery"). Here, the Settlement was reached only after the Parties exchanged significant informal discovery, including the third-party discovery obtained from Elerts, engaged in a productive settlement conference with the assistance of Chief Magistrate Judge Spero, and engaged in additional arms' length negotiations to finalize the terms of the written settlement agreement. Logan Decl. ¶¶ 6-8. Accordingly, the Court should have no doubt that the proposed Settlement is the product of serious, informed non-collusive negotiations and should presume its fairness.

Second, the Settlement is free of any defects. A court is likely to find a settlement free from obvious deficiencies when it provides a real, immediate benefit to the class despite numerous risks. *See Tableware*, 484 F. Supp. 2d. at 1080. Here, the injunctive relief afforded is significant in light of the serious risks Plaintiff faced in obtaining any relief for the class. With Defendant's third motion to dismiss pending, Plaintiff faced the imminent risk that the Court would dismiss her CCIA claims again, as it previously did with respect to her FAC. If dismissed, the Class would be left with nothing and Defendant could choose to continue to collect IMEI numbers and location data without consent. But under the proposed settlement agreement, class members receive immediate, meaningful injunctive relief that fully corrects Defendant's alleged unlawful behavior. *See Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018 WL 582564, at \*5 (N.D. Cal. Jan. 25, 2018) (approving injunctive settlement where "continued litigation could not result in any greater injunctive relief to the class and would only deprive the class of immediate relief"). Consequently, there should be no doubt that the Settlement—which preserves all claims for monetary relief against Defendant—is not "obviously deficient." *See, e.g.*, *Tableware*, 484 F. Supp. 2d at 1080 ("Based on [the] risk and the anticipated expense and complexity of further litigation, the court cannot say the proposed settlement is obviously deficient . . . .").

1    Third, the Settlement does not provide preferential treatment to any individual class

2    member. As discussed above *supra* Section IV.E, the Settlement provides blanket injunctive relief

3    that applies equally to every Settlement Class Member such that each class member will receive

4    identical benefits—no longer having their IMEI numbers and certain geolocation data collected by

5    Defendant.

6    Finally, the Settlement falls well within the range of possible approval. "In determining

7    whether the proposed settlement falls within the range of reasonableness, the Court evaluates the

8    relative strengths and weaknesses of the Plaintiffs' case, and balances Plaintiffs' expected

9    recovery against the value of the settlement offer." *Bickley v. Schneider Nat'l, Inc.*, No. 08-cv-

10   05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. April 25, 2016) (citing *Cotter v. Lyft, Inc.*, 176

11   F. Supp. 3d 930, 935 (N.D. Cal. 2016)). Generally, satisfaction of the previous three factors is

12   sufficient to satisfy this prong. *See Dilts v. Penske Logistics, L.L.C.*, No. 08-cv-0318-CAB, 2014

13   WL 12515159, at *3 (S.D. Cal. July 11, 2014) (finding that the settlement fell within the range of

14   possible approval "given the fact that the settlement [was] the product of serious, informed and

15   non-collusive negotiations, ha[d] no obvious defects, and [did] not improperly grant preferential

16   treatment"). As stated above, the proposed settlement provides significant injunctive relief for

17   the class, as it stops Defendant from collecting the data at issue and subjects Defendant to a court

18   order that prohibits it from doing so in the future. And crucially, the Settlement Class waives

19   none of its rights to pursue damages—whether on a class or individual basis—under the

20   proposed settlement. That means that the Settlement Class is getting essentially all the injunctive

21   relief they could have hoped for, all without giving up any claims for damages. *See Kim*, 2012

22   WL 5948951, at *6 (finding settlement fair, adequate and reasonable where it "stops the

23   allegedly unlawful practices, bars Defendant from similar practices in the future, and does not

24   prevent the class members from seeking legal recourse."). When comparing the relief under the

25   proposed settlement to Plaintiff's expected recovery, it is clear that the Settlement falls well

26   within the range of possible approval.

27   For these reasons, Plaintiff and proposed Class Counsel firmly believe that the Settlement

28   is fair, reasonable, and adequate, and as such, should be preliminarily approved.

**VII.   SINCE THE SETTLEMENT PROVIDES INJUNCTIVE RELIEF ONLY AND DOES NOT RELEASE ANY MONETARY CLAIMS, NO NOTICE IS REQUIRED**

In Rule 23(b)(3) class action cases, class members are entitled to receive the "best notice practicable" under the circumstances. *Rannis v. Recchia,* 380 F. App'x 646, 650 (9th Cir. 2010). But in Rule 23(b)(2), settlements that—like this one—provide for only injunctive relief and preserve class members' claims for monetary relief, federal courts in this District and across the country have uniformly held that notice to the class is not required. *See, e.g., Lilly*, 2015 WL 1248027, at *9 (Tigar, J.) (concluding class notice unnecessary because "even if notified of the settlement, the settlement class would not have the right to opt out from the injunctive settlement and the settlement does not release the monetary claims of class members"); *Kim*, 2012 WL 5948951, at *4 (Beeler, J.) (concluding notice unnecessary because "the settlement does not alter the unnamed class members' legal rights" to pursue monetary relief); *Stathakos*, 2018 WL 582564, at *3–4  (Gonzalez Rogers, J.) (relying on *Lilly* and citing other federal courts across the country in determining that class notice is not required in injunctive-only settlements). That is the case here. The proposed Settlement provides for only injunctive relief and expressly preserves the rights of Settlement Class Members to pursue their claims against Defendant for statutory damages or other monetary relief. Agreement ¶ 3.1–3.2. Even if notice was sent, class members would not have the right to opt out of the Settlement. *See Lilly*, 2015 WL 1248027, at *9; *Dukes*, 564 U.S. at 362 (Rule 23 "provides no opportunity for . . . (b)(2) class members to opt out"). Accordingly, no notice to the class should be required.

**VII.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) certify the Settlement Class for settlement purposes; (ii) appoint Pamela Moreno as the class representative; (iii) appoint Rafey S. Balabanian and Todd Logan of Edelson PC as class counsel; (iv) grant preliminary approval of the proposed Settlement Agreement; (v) schedule the final approval hearing; and (vi) grant such further relief the Court deems reasonable and just.

*           *           *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**PAMELA MORENO**, individually and on behalf of all others similarly situated,

Dated: August 24, 2018

By: /s/ Todd Logan
One of Plaintiff's Attorneys

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*