UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA MORENO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT,<br><br>　　　　　Defendant. | Case No.17-cv-02911-JSC<br><br>**ORDER GRANTING FINAL APPROVAL AND GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES**<br><br>Re: Dkt. Nos. 104, 106 |

Plaintiff Pamela Moreno alleges that Defendant the San Francisco Bay Area Rapid Transit District ("BART") violated California's Cellular Communications Interception Act, Cal. Gov't Code § 53166, through its clandestine collection of cell phone identifiers and location data via the BART Watch mobile application. A little over a year after litigation commenced, the parties agreed to settle the action on a class-wide basis. The Court granted preliminary approval of the injunctive relief only settlement under Federal Rule of Civil Procedure 23(b)(2). (Dkt. No. 102.) Now pending before the Court are two motions: (1) Plaintiff's motion for final approval of class action settlement, and (2) Plaintiff's motion for attorneys' fees and an incentive award. (Dkt. Nos. 104, 106.) Having carefully reviewed the briefs, and having held a hearing on January 17, 2019, the Court GRANTS Plaintiff's motion for final approval and GRANTS Plaintiff's motion for attorneys' fees and an incentive award.

## COMPLAINT ALLEGATIONS

In 2014, BART, through its police department, partnered with a Massachusetts software company, Elerts, to develop and launch the BART Watch mobile application ("BART Watch App" or "the App") for Android and IOS smartphones. (SAC (Dkt. No. 63) ¶ 23.) BART's Board of Directors and Citizen Review Board played a direct and ongoing role in ordering the App,

supervising its rollout, maintaining it, and monitoring all the data it collects. (*Id*. at ¶ 24.) Further, BART's Chief Information Officer was directly responsible for overseeing the agency's development, release, and management of the BART Watch App. (*Id*. at ¶ 25.)

The App is marketed in the Google Play store as a way for the public to quickly and discreetly report suspicious activity directly to BART police by "send[ing] pictures, text messages, and locations of suspicious people or activities." (*Id*. ¶ 26.) An estimated 10,000 to 50,000 people have downloaded the App from the Google Play store. (*Id*. ¶ 27.)

When a user first downloads the App, the Google Play store advises the user that the App requires access to certain phone functionality to operate. (*Id*. ¶ 28.) In particular, it lists the following items that the App needs "access to": "location, phone, photos/media/files, camera, and device ID & call information." (*Id*.) The user must click "Accept" and then the App downloads onto the smartphone. (*Id*. ¶ 29.) When the user opens the App for the first time, the user must agree to the "Licensed Application End User License Agreement" ("User Agreement"). (*Id*.) A user cannot begin using the App until he or she has clicked "Yes, I Agree" at the end of the User Agreement. (*Id*. ¶ 30.) The next screen has a button labeled "Start Using" which the applicant must click before proceeding to actually using the App. (*Id*.) The "Start Using" screen prompts the user to input contact information so "BART can better assist you in case of an emergency." (*Id*.; Fig. 5-7.) This information is not required, but the message to this effect is not clear. (*Id*.) If users provide their contact information, the information is sent with their cellular phones' unique numeric identifier and a unique clientid is created and associated with the contact information. (*Id*. ¶¶ 33-34.) Even if users do not provide their contact information, their cellular phones' unique numeric identifier is transmitted "with the other tracking data." (*Id*. ¶ 35.) Although the App requests permission to access user's location information, it does not require their consent to collect and transmit this information. (*Id.* ¶ 40.)

The App is programmed "to periodically transmit each transit user's clientid and precise location information to [Defendants'] servers." (*Id*. ¶ 36.) This location data includes "course," "elevation," and "speed." (*Id*. ¶ 37.) Even when users submit an "anonymous tip" the App collects and transmits to its servers identifying locations including location and the unique

2

"clientid." (*Id*. ¶ 38, Fig. 11.) The App is "the first step of a multi-stage system that utilizes both digital (i.e., the App itself) and physical (i.e., the servers controlled by Defendant) components to achieve its ultimate end, at the direction of the human(s) in control of the machines: the collection of all BART Watch App user's data." (*Id*. ¶ 39.)

Plaintiff Pamela Moreno downloaded the App in 2016 onto her Samsung Galaxy S7 and regularly uses it as part of her commute. (*Id*. ¶ 51.) When she first downloaded the App she was not aware that the App was designed to (and actually did) collect her smartphone's unique identifier and physical location and then transmit that information to Defendants. (*Id.* ¶ 52.) Plaintiff would not have downloaded the App or consented to collection and transmission of this information had she known. (*Id*. ¶ 53.)

## THE SETTLEMENT

**Settlement Class**: The Settlement Agreement provides for an injunctive relief settlement class of all persons in the United States who between January 1, 2016 and October 4, 2018 had their mobile device's International Mobile Equipment Identity Number and/or geolocation collected by the BART Watch App.

**Injunctive Relief**: Under the Settlement Agreement, BART has agreed that when a BART Watch App user submits a "report" BART will not obtain or collect any "International Mobile Equipment Identity" numbers, and will only obtain or collect a limited set of information as laid out in the Settlement Agreement. (Dkt. No. 92-2 at 6-7, § 2.1.[1]) BART has also agreed that in the future it will comply with all the requirements set forth in the Cellular Communications Interception Act, Cal. Gov't Code § 53166(b)-(c) with respect to any future use of "Cellular Communications Interceptions Technology." (*Id*.) BART will also make reasonable efforts not to retain geolocation information from the BART Watch App for more than three years. (*Id*.)

**Attorneys' Fees and Incentive Award**: The parties agreed that BART would not oppose a request for attorneys' fees of up to $57,500. (*Id*. at 10, § 7.1.) BART also agreed not to oppose a request for an incentive award for Plaintiff of up to $2,500. (*Id*. at 11, § 7.2.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**Class Notice**: Because the class certified under the Settlement Agreement was a Rule 23(b)(2) class which did not require the release of any monetary claims for relief, the parties agreed that no notice was necessary. (*Id*. at 8, § 4.)

**Release**: In exchange for the injunctive relief set forth above, the parties have agreed to release all class member injunctive relief claims regarding the BART Watch App. (*Id*. at 7, § 3.)

## PROCEDURAL HISTORY

Plaintiff filed this putative class action on May 22, 2017 alleging claims against BART and Elerts under (1) the Cellular Communications Interception Act, Cal. Gov't Code § 53166; (2) the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.; (3) the right to privacy under the California Constitution, Article I, Sec. 1; and (4) intrusion upon seclusion. (Dkt. No. 1.) After Defendants moved to dismiss, Plaintiff filed her First Amended Complaint pleading claims against BART and Elerts, and substituting the intrusion upon seclusion claim for a claim under Cal. Pen. Code § 637.7, but otherwise repleading the other claims. (Dkt. No. 36.) Defendants again moved to dismiss and to strike the class allegations. The Court granted the motion to dismiss with leave to amend and denied the motion to strike as moot. (Dkt. No. 61.) Plaintiff then filed her second amended complaint which pleads a single claim for relief against BART for violation of California's Cellular Communications Interception Act, Cal. Gov't Code § 53166. (Dkt. No. 63.) BART again moved to dismiss and strike the class allegations. (Dkt. Nos. 65 & 66.) The Court took the motion under submission and referred the parties to Magistrate Judge Spero for a settlement conference. (Dkt. No. 73.)

On June 28, 2018, the parties attended an all day settlement conference with Judge Spero and reached an agreement in principle. (Dkt. No. 87.) Two months later, Plaintiff filed a motion for preliminary approval of the class action settlement which the Court granted. (Dkt. No. 102.) Plaintiff thereafter filed the now pending motions for attorneys' fees and for final approval of the class action settlement. (Dkt. Nos. 104, 106.)

After conducting the final fairness hearing and carefully considering the terms of the settlement, the court now addresses whether this class action should receive final certification; whether the proposed settlement is fair, reasonable, and adequate; and whether Class Counsel's

request for attorneys' fees, as well as an incentive award, should be granted.

**DISCUSSION**

**I. Motion for Final Approval**

**A. Final Class Certification**

Final approval of a class action settlement requires, as a threshold, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019, 1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on October 4, 2018, this order incorporates by reference its prior analysis and certifies the settlement class.

**B. Notice was Not Required**

Unlike a Rule 23(b)(3) class where notice is mandatory, Rule 23(c)(2) states that, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2). As a result, "[c]ourts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members" and there is no option for class members to opt out. *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, *8-9 (N.D. Cal. Mar. 18, 2015) (holding that because the settlement class would not have the right to opt out from the injunctive settlement and the settlement did not release the monetary claims of class members, class notice was not necessary); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). "In injunctive relief only class actions certified under Rule 23(b)(2), federal courts across the country have uniformly held that notice is not required." *Stathakos v. Columbia Sportswear Co.*, No. 4:15-CV-04543-YGR, 2018 WL 582564, at *3 (N.D. Cal. Jan. 25, 2018) (collecting cases).

Here, the terms of the Settlement Agreement provide for injunctive relief only and class members do not release any claims regarding monetary relief. The Court therefore found that no notice was required. However, because this action was brought under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, Defendant was required to provide notice to the relevant state and

5

federal officials under 28 U.S.C. § 1715(b). Defendant did so on October 11, 2018 and more than 90 days have passed with no objections filed. (Dkt. No. 110-1.) Accordingly, because Defendant complied with the statutory notice requirements under CAFA, its obligations for adequate notice have been met.

**C. Approval of the Settlement**

Having determined that class treatment is warranted, the Court now addresses whether the terms of the parties' settlement appear fair, adequate, and reasonable under Rule 23(e). In making this determination, a court typically considers the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). The court need not consider all of these factors, or may consider others. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's fairness assessment will naturally vary from case to case[.]").[2]

1) *Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation and Class Certification*

The first relevant factor is the risk of continuing litigation, including the strengths and weaknesses of Plaintiff's case on the merits, balanced against the certainty and immediacy of recovery from the Settlement Agreement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000). There is no "particular formula by which th[e] outcome

---

[2] In considering whether a class action settlement agreement is fair, adequate, and reasonable courts typically also examine whether the settlement agreement was the result of collusion between the parties. *Bluetooth,* 654 F.3d at 947. However, the *Bluetooth* collusion analysis does not apply where, as here, the settlement is for injunctive relief purposes only and class members do not release any monetary claims. *See Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *5 (N.D. Cal. Aug. 18, 2017) ("Arguably, *Bluetooth* is not even applicable to this settlement because it does not involve a Rule 23(b)(2) damages class" because "there is no common fund, 'constructive' or otherwise: the certified class is injunctive-relief-only, and monetary damages claims are not at issue"); *see also Stathakos*, 2018 WL 582564, at *4 (weighing whether the settlement agreement is fair, adequate and reasonable under the *Churchill* factors only); *Hart v. Colvin*, No. 15-CV-00623-JST, 2017 WL 9288252, at *2 (N.D. Cal. Apr. 17, 2017) (same); *Lilly*, 2015 WL 2062858, at *4 (same).

6

must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez*, 563 F.3d at 965 (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.* "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quotation marks and citation omitted).

Here, as Plaintiff acknowledges, the case faced significant challenges. The Court had previously dismissed many of Plaintiff's claims and a motion to dismiss Plaintiff's remaining claim was pending at the time of settlement. As the Court advised Plaintiff at the hearing on the pending motion to dismiss, her case faced significant obstacles including a novel legal theory testing a newly adopted California statute. Given the uncertainty regarding Plaintiff's ability to prevail on this theory and the expense of prolonged litigation even should Plaintiff prevail at trial, these factors weigh in favor of approval. *See Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2017 WL 995215, at *4 (N.D. Cal. Mar. 15, 2017).

2) *The Settlement Amount*

The fourth fairness factor, the amount of recovery offered, also favors final approval of the Settlement Agreement. This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citation omitted). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (internal quotation marks, citation, and footnote omitted).

Here, Defendant agreed to significant injunctive relief including a prohibition on collecting geolocation and other identifying data in the future and Defendant's commitment to do so is subject to ongoing judicial oversight. While BART disputes that it—as opposed to the previously named Defendant Elerts—maintained this identifying data, BART has conceded that this information is no longer collected or maintained. (Dkt. No. 77 at 18:3-12.) There can be no question that the decision to stop collecting this data came as a result of Class Counsel's efforts in this action. *See Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at \*4 (N.D. Cal. Aug. 18, 2017) (granting final approval where "[t]hrough the work of class counsel, the class has obtained essentially all of declaratory and injunctive relief that they sought" even though "much of the relief obtained for the class was the result of Facebook's changes in business practice in response to the litigation, rather than a result of the Settlement Agreement per se."). Although class members do not receive monetary relief as a result of the settlement, the case was only certified for injunctive relief purposes and class members are free to bring individual damages claims. *See Stathakos*, 2018 WL 582564, at \*4 (collecting cases granting final approval in injunctive relief only settlements). Accordingly, this factor weighs in favor of approving the settlement.

3) *Extent of Discovery Completed & the Stage of the Proceedings*

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table[.]" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quotation marks and citation omitted). Rather, the court focuses on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros*, 303 F.R.D. at 371 (citation omitted). Here, the stage of the proceedings also supports the Settlement Agreement. The parties have engaged in substantial motion practice and thus have had an opportunity to evaluate the strength and weaknesses of the relative claims and defenses. This factor therefore weighs in favor of approval.

4) *Experience and Views of Counsel*

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *See In re Omnivision*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (internal

quotation marks and citation omitted). That is, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" *See Rodriguez*, 563 F.3d at 967 (internal quotation marks and citation omitted). Here, Class Counsel have demonstrated their experience in litigating similar privacy class actions. (Dkt. Nos. 104-3; 106-1 at ¶ 7.) They have also demonstrated that they are well informed of the facts, claims, and defenses in this action, as well as the risks of proceeding with their novel legal theory. (Dkt. No. 106-1 at ¶ 8.) Accordingly, Class Counsel's endorsement weighs in favor of approving the settlement. *See, e.g.*, *In re Omnivision*, 559 F. Supp. 2d at 1043.

5) *Government Participant*

"The participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Here, BART is a governmental agency, and as such, its participation and consent to the injunctive relief weighs in favor of approving the settlement. Further, no governmental entity has objected to the settlement after having been given notice in accordance with 28 U.S.C. § 1715. *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 588–89 (N.D. Cal. 2015) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."). This factor thus weighs in favor of settlement.

6) *Reaction of the Class*

Because notice was not necessary here, the reaction of the class is not considered in weighing the fairness factors. *See Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *4 (N.D. Cal. May 4, 2015).

In sum, a balancing of the *Churchill* factors leads the Court to conclude that this Settlement Agreement is fair, adequate, and reasonable.

**II. Motion for Attorneys' Fees and an Incentive Award**

Class Counsel has separately filed a motion for attorneys' fees and a request an incentive award for Ms. Moreno. (Dkt. No. 104.) In particular, Class Counsel seeks $57,500 in attorneys'

9

fees and $2,500 as an incentive award for Ms. Moreno. For the reasons set forth below, the Court finds both requests reasonable.

### A. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the parties' Settlement Agreement entitles Class Counsel to seek up to $57,500 in attorneys' fees and costs. (Dkt. No. 92-2 at 10-11, § 7.1.) Attorneys' fees are also authorized under the Cellular Communications Interception Act, Cal. Gov't Code § 53166. *See* Cal. Gov't Code § 53166(d) ("an individual who has been harmed by a violation of this section may bring a civil action in any court of competent jurisdiction" and recover "reasonable attorney's fees and other litigation costs reasonably incurred.").

Because the claim here arose under California law, attorneys' fees are to be awarded in accordance with California law. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). California courts apply the lodestar method in class actions governed by California law. *See Meister v. Regents of Univ. of California*, 67 Cal. App. 4th 437, 448–49 (1998) ("the California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation."). Similarly, under federal law, "in injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon*, 150 F.3d at 1029; *see Yeagley v. Wells Fargo & Co.*, 365 Fed.Appx. 886, 887 (9th Cir. 2010) (holding that the district court should have used the lodestar to calculate attorney's fees where injunctive relief was sought and no common fund was created).

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. V. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Regional Planning Com.* 134 Cal.App.3d 999, 1004–1005 (1982). A reasonable hourly rate is defined as "that prevailing in the community for similar work." *PLCM Grp. V. Drexler*, 22 Cal. 4th at 1095.

10

Here, Class Counsel attests that their lodestar is $181,450 for 527 hours of work multiplied by the hourly rate for each attorney. (Dkt. No. 104-1 at ¶ 19.) This figure reflects deductions for "duplicative, excessive, or otherwise unnecessary" tasks. (*Id*. at n.1.) Class Counsel has submitted a detailed declaration regarding their hourly rates, the number of hours claimed for each attorney, and the total fee request for each attorney involved in the litigation. (*Id*. at ¶ 19.) Class counsel has demonstrated that their hourly rates—ranging from $700 an hour for the managing partner to $225 an hour for the most junior associate—are reasonable in light of prevailing market rates in the Bay Area. *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240."). While Class Counsel has not submitted detailed billing records in support of their claimed 527 hours of work, counsel has submitted a declaration detailing the hours billed by each attorney and describing generally the work performed in this action including extensive motion practice and participation in mediation. (Dkt. No. 104-1 at ¶¶ 6-14, 19.) Although the Court generally requires more detailed billing records to support a lodestar application, any concern on this front is alleviated by counsel's agreement to accept a very significant lodestar discount. The fees sought represent approximately one third of Class Counsel's actual lodestar, yielding a significant "negative multiplier." Further, the attorneys' fees will not be deducted from a monetary class settlement.

In light of the foregoing, the Court finds Plaintiff's requested attorneys' fees reasonable.

### B. Incentive Award

"Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. The Ninth Circuit has emphasized that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

11

adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted). In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, No. C–11–00594-DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) (citing *Van Vranken v. Atl. Richfield Co*., 901 F.Supp. 294, 299 (N.D. Cal. 1995) (citations omitted) ).

A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal. 2008). In this district, a $5,000 payment is presumptively reasonable. *See, e.g*., *Burden v. SelectQuote Ins. Servs*., No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013); *Hopson v. Hanesbrands, Inc*., No. CV–08–0844, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).

Here, Plaintiff seeks an incentive award of $2,500. The Court finds this amount reasonable in light of Ms. Moreno's active role in this litigation, her willingness to take on representing the interests of the class, the fact that the settlement provides significant injunctive relief while preserving class members' damages claims, and because the incentive award will not reduce class recovery in this injunctive relief only settlement. (Dkt. No. 104-1 at ¶¶ 21-24.)

**CONCLUSION**

For the reasons stated above, the Court rules as follows:

1. For the reasons set forth in this and the Court's October 4, 2018 Order, the Court confirms its certification of the class for settlement purposes only.

2. The Court grants final approval of the proposed settlement.

3. The Court grants Class Counsel Edelson PC's request for $57,500 in attorneys' fees.

4. The Court grants an incentive award of $2,500 to class representative Pamela Moreno.

This Order disposes of Docket Nos. 104 and 106.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: January 28, 2019

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge